UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEONEL MENDOZA,

    Petitioner,

v().                                                       Case No. 8:04-cv-2457-T-23MSS

JAMES V. CROSBY, JR.,

    Respondent.
_____/

**O R D E R**

Mendoza petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his conviction for lewd and lascivious molestation on a child less than twelve, for which offense he was sentenced to ten years. The respondent filed his response (Doc. 7), which is supported by numerous exhibits ("Respondent's Exhibit"). The respondent admits that the petition is timely. Respondent's Exhibit 3.

Mendoza's petition presents two grounds for relief. The respondent argues that the first ground is not properly exhausted and now procedurally barred from review on the merits. The respondent argues that the second ground is without merit. Having considered the arguments of the parties and reviewed the record, this court concludes that the respondent's arguments are correct.

Ground One:

The respondent correctly argues that Mendoza failed to present to the state courts the federal claim asserted in Ground One. In Ground One, Mendoza alleges that the trial

court erred by allowing the prosecution to use the victim's out-of-court hearsay statements in violation of his rights under the Confrontation Clause. Although Mendoza alleged trial court error based on the out-of-court statements in his direct appeal (Respondent's Exhibit 2), he raised the issue only as a question of state law; Mendoza failed to raise in the state court proceeding his contention that admission of the testimony violated his federal constitutional rights under the Confrontation Clause.

## Exhaustion and Procedural Default

To meet the exhaustion requirement, Mixon must have presented his claims to the state courts before raising them in federal court, and the claims presented to the federal court must be the same claims that were presented to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."); *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."). Mere similarity of claims is insufficient. Briefing an issue as a matter of state law is not sufficient to exhaust a federal claim on the same grounds.

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

*Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). *Accord. Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before

the state courts, or that a somewhat similar state-law claim was made.").

Consequently, Mendoza's federal claim asserted in Ground One is unexhausted and procedurally barred from federal review because it is too late to present that claim in state court. The failure to properly exhaust state court remedies when remedies were available results in a procedural default of the unexhausted claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."), and *Kennedy v. Herring*, 54 F.3d 678, 684 (1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), *appeal after remand*, *Kennedy v. Hopper*, 156 F.3d 1143 (11th Cir.), *cert. denied sub nom Kennedy v. Haley*, 526 U.S. 1075 (1999). Accordingly, Ground One must be dismissed.

Ground Two:

The respondent recognizes that the claim asserted in Ground Two--the alleged denial of the effective assistance of counsel because counsel denied Mendoza his right to testify-- is properly exhausted and subject to review on the merits.

### STANDARD OF REVIEW

Because this action commenced after April 24, 1996, 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs these proceedings. *Wilcox v. Florida Dep't of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).

Section 2254(d) creates a highly deferential standard for federal court review of state

court adjudications. In pertinent part, § 2254(d) states:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Moreover, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). *Accord Brown v.*

*Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

Mendoza's conviction and sentence was affirmed on direct appeal in a *per curiam* decision (Respondent's Exhibit 4), and the denial of his subsequent Rule 3.850 motion for post-conviction relief was likewise affirmed on appeal in another *per curiam* decision (Respondent's Exhibit 11). The state appellate court's *per curiam* affirmances are still entitled to deference under § 2254(d)(1), because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v.* Crosby, 538 U.S. 906 (2003).

Mendoza has the burden of overcoming all state court factual determinations by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. *Parker v. Head,* 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). Consequently, this court must defer to the findings of fact found by the state court when it rejected Mendoza's post-conviction claim of ineffective assistance of counsel.

Mendoza alleges in Ground Two that his right to the effective assistance of counsel was denied because trial counsel precluded Mendoza from testifying at trial. The state court addressed this claim in great length in denying Mendoza's motion for post-conviction relief.

> The Defendant was charged by Information with one count of lewd or

lascivious molestation by a person over the age of 18 on a child less than 12. On February 13, 2002, a jury convicted him as charged, and the Court adjudicated him guilty. On May 13, 2002, the Court sentenced him to ten years in the Department of Corrections with credit for time served followed by four years of sex offender probation. The Defendant appealed. The Second District Court of Appeal affirmed his conviction and sentence. *See Mendoza v. State*, 856 So. 2d 996 (Fla. 2d DCA 2003).

In his present Motion, the Defendant raises two grounds of ineffective assistance of counsel. Neither of these grounds has merit; therefore, the Court will deny his motion.

. . .

Ground Two: Defendant claims counsel was ineffective because he denied him the right to testify on his own behalf. Defendant contends that although he was highly intoxicated on the night in question and "didn't remember much" about that night, he told counsel that he got out of the car to urinate. According to the Defendant, he would have testified that

> he got out of the car to urinate and that's what he was doing when the two women came upon him with his zipper down and his pants falling off. He would have explained to the jury that he was so drunk that he had to hold onto the car to keep from falling rather than holding his pants up, which would explain why Ms. Jones saw him holding onto the car and why Ms. Rush saw his pants sagging. It would further explain why Ms. Rush smelled urine on the defendant's hand.

(Motion at p. 13). Defendant claims his testimony was essential, but counsel advised him not to testify because it might expose him to a guilty verdict on a lesser charge and the State would use anything he said on the witness stand against him to discredit him.

Defendant fails to show how counsel's advice not to testify was deficient. While he cites case law holding that a defendant's desire to testify cannot be overborne by counsel, his facts fail to rise to the level necessary to show that was the case. Instead, the facts as averred by the Defendant show counsel's concern of what might happen if the Defendant took the stand, i.e., a guilty verdict on a lesser charge (exposure of sexual organs) and how the Defendant's version of events would be utilized to discredit his testimony when considered in conjunction with the testimony already offered by the State's witnesses. That testimony included the following:

1.  Testimony of Julia Rush that she smelled the Defendant's hand after

       approaching the car with the victim's mother and that it smelled like he had been touching the victim.  (T.T. 18-19)  Her testimony was fully explored by counsel on cross-examination.  Rush testified his hand smelled "like a little girl hadn't washed all day from playing," but could not differentiate the smell from that of a little boy.  (T.T. 28)  She also stated it didn't smell like urine, but also stated she didn't know what urine smelled like because she doesn't go around smelling urine.  (T.T. 28)  She further admitted it could have been the smell of anyone on his hands, but then reiterated on re-direct, she though [sic] it smelled like a little girl.  (T.T. 38-40)

2.     Julia Rush's testimony that when she and the victim's mother approached the car, the Defendant's pants were unzipped and the waist was down, and the victim's shorts "was pulled halfway down."  (T.T. 19, 38)

3.     Shirley Jones' (the victim's mother) testimony that when she first saw the Defendant he was "like buttoning up his pants."  (T.T. 60)

4.     Deputy Sehorn's testimony that when she arrived and observed the Defendant, his pants "were just being held together with the belt buckle.  They weren't snapped or zipped."  (T.T. 80)  She testified that the Defendant also was intoxicated -- "He definitely had been drinking."  (T.T. 80-8 1)  The victim related to her that the Defendant had rubbed her chest over her shirt, had rubbed her vaginal area over her shorts, over her panties and under her panties, and had asked her to "suck his wiener."  (T.T. 82-83)  After a Spanish-speaking deputy had been summoned to interpret for her, she affirmed that the Defendant never mentioned anything about having to go to the bathroom when the little girl was next to him.  (T.T. 83)

As well, the Probable Cause Affidavit in the court file does not indicate any statement by the Defendant that he was urinating outside the vehicle; the only result of the officer's interview was the Defendant claiming nothing happened and he did not know what they were talking about.  (See Probable Cause Affidavit)

       Considering the Defendant's present claim as to what his testimony would have been, this Court cannot find counsel deficient for advising against the Defendant taking the stand in his own defense or how the Defendant's not testifying prejudiced his defense.  The Defendant was not relying on a specific affirmative defense.  Essentially, his defense was that the event never occurred or that the victim's mother and Ms. Rush implanted the event in the

mind of the victim. By not taking the stand, however, defense counsel was able to place the idea in the jury's mind that the Defendant had, in fact, exited the vehicle to urinate and not expose his client to harmful cross-examination that, in all likelihood, would have discredited his testimony (e.g., he did not tell law enforcement that he had exited the vehicle only to urinate, his inability to recall the events very well because of his state of intoxication, his pants being unsnapped and unzipped with the waist down when he purportedly only exited the vehicle to urinate).

Finally, the Court made inquiry of the Defendant during trial as to whether he wished to take the stand. Counsel indicated the Defendant would not testify, but the State requested the Court to inquire directly of the Defendant. (T.T. 112) Counsel advised the Court that he told the Defendant not to answer because it was "not in his best interest to answer any of the Court's questions. The Court and the court system wants to use his answers against him later. Therefore, it's not in his best interest to answer these questions." (*Id.*) The Court acknowledged counsel, but went on to inform the Defendant as follows:

> THE COURT: Okay, and he doesn't have to answer them if he doesn't want to. But, I'm informing you, Mr. Mendoza, that you have the right to testify; and if you choose not to testify, that is your decision. It is your decision alone. No one can keep you from testifying if you wish to testify.
>
> This is your trial. If you desire to testify, you may take the stand. And if you don't testify, that is a decision you make along with consulting with your lawyer. But no one can force you not to testify if you wish to because you have an absolute right to testify.
>
> Do you understand that?
>
> THE DEFENDANT (THROUGH THE INTERPRETER): I understand.

(T.T. 112-113) Despite being informed that he had an "absolute right to testify" and that "no one" could prevent him from testifying, the Defendant expressed no desire to take the stand.

Defendant's present claim that he thought he would be killing his chances for acquittal if he took the stand and that "even the court was out to convict him" simply cannot stand in the face of the evidence against him and the information provided to him by the Court. Moreover, his claim that he

> speaks no English does not save him.  The Defendant had the assistance of an interpreter throughout the trial, to interpret the testimony and all other proceedings in the courtroom.  (T.T. 1)  If he failed to understand something that was going on, all he had to do was ask for further explanation through the interpreter; this he also failed to do.

Respondent's Exhibit 9 at 1 & 4 - 8.  The state court's findings regarding the colloquy are supported by the record.  Respondent's Exhibit 1 at 112-13.  Mendoza's present claim that he wanted to testify is refuted by the record.  Mendoza has not met his burden of showing that the state court's decision was an unreasonable determination of the facts or an unreasonable application of controlling caselaw as required by 28 U.S.C. § 2254(d).

Accordingly, the petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk shall **ENTER A JUDGMENT** against Mendoza and **CLOSE** this action.

ORDERED in Tampa, Florida, on July 7, 2005.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

SA/ro